*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

| | | |
|---|---|---|
| *JOHN HESSON,* | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| *v.* | ) | *No. 2:15-cv-106-DBH* |
| | ) | |
| *CAROLYN W. COLVIN,* | ) | |
| *Acting Commissioner of Social Security,* | ) | |
| | ) | |
| *Defendant* | ) | |

**REPORT AND RECOMMENDED DECISION**[1]

This Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that the administrative law judge erred in concluding that he had no physical restrictions despite his history of back pain and his diagnosis of two herniated discs, and that he had only moderate mental restrictions despite the opinion of a private consultant, John Newcomb, M.D., that he had marked mental restrictions. *See* Plaintiff's Itemized Statement of Specific Errors ("Statement of Errors") (ECF No. 10) at 1-2. I find no reversible error and, accordingly, recommend that the court affirm the commissioner's decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the

---

[1] This action is properly brought under 42 U.S.C. § 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on September 18, 2015, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

administrative law judge found, in relevant part, that the plaintiff had severe impairments of borderline IQ, personality disorder, affective disorder, and anxiety disorder, Finding 2, Record at 20; that he did not have an impairment or combination of impairments that met or medically equaled the criteria of any impairment listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P (the "Listings"), Finding 3, *id.* at 22; that he had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations: that he could perform simple tasks that did not involve public contact, Finding 4, *id*. at 23; that, considering his age (32 years old, defined as a younger individual, on the date his application was filed, April 23, 2012), education (limited), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 6-9, *id*. at 28; and that he, therefore, had not been disabled since April 23, 2012, the date his application was filed, Finding 10, *id*. at 29.  The Appeals Council declined to review the decision, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. § 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. § 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work.  20 C.F.R. § 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146

n.5 (1987); *Goodermote*, 690 F.2d at 7.  The record must contain substantial evidence in support

of the commissioner's findings regarding the plaintiff's RFC to perform such other work.  *Rosado*

*v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The statement of errors implicates Steps 2 and 3 of the sequential evaluation process.

Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do

no more than screen out groundless claims.  *McDonald v. Secretary of Health & Human Servs.*,

795 F.2d 1118, 1124 (1st Cir. 1986).  When a claimant produces evidence of an impairment, the

commissioner may make a determination of non-disability at Step 2 only when the medical

evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which

would have no more than a minimal effect on an individual's ability to work even if the

individual's age, education, or work experience were specifically considered."  *Id.* (quoting Social

Security Ruling 85-28).

At Step 3 of the sequential evaluation process, the claimant bears the burden of proving

that his impairment or combination of impairments meets or equals a listing.  20 C.F.R.

§ 416.920(d); *Dudley v. Secretary of Health & Human Servs.*, 816 F.2d 792, 793 (1st Cir. 1987).

To meet a listing, the claimant's impairment(s) must satisfy all criteria of that listing, including

required objective medical findings.  20 C.F.R. § 416.925(c)(3).  To equal a listing, the claimant's

impairment(s) must be "at least equal in severity and duration to the criteria of any listed

impairment."  *Id*. § 416.926(a).

## I.  Discussion

### A.  Finding of No Exertional Limitations

The plaintiff first challenges the administrative law judge's omission of any exertional

functional limitations, asserting that he could have only done so by impermissibly interpreting raw

medical evidence.  *See* Statement of Errors at 2-3; *see also, e.g.*, *Gordils v. Secretary of Health & Human Servs.,* 921 F.2d 327, 329 (1st Cir. 1990) (Although an administrative law judge is not precluded from "rendering commonsense judgments about functional capacity based on medical findings," he or she "is not qualified to assess residual functional capacity based on a bare medical record.").

He points out that:

1.      Treating provider Jeffrey Ray, D.O., of Sacopee Valley Health Center noted on November 28, 2012, that he had "radiation to left leg and pain [was] worsening[.]"  Statement of Errors at 3 (quoting Record at 604).

2.      An MRI performed on December 6, 2012, revealed that he had "[c]entral disc herniations at L4-5 and L5-S1 without evidence of nerve root compromise."  *Id*. (quoting Record at 602).

3.      He sought treatment at Goodall Express Care Clinic on January 24, 2013, for "chronic lower back pain radiating up to neck[,]" with "pain increasing[.]"  *Id*. (quoting Record at 585).

4.      He complained during a January 30, 2013, visit to Douglas H. Buxton, M.D., of Maine Medical Partners Neurosurgery & Spine, of low back pain "ongoing for the past 3 years, but has worsened in the past year[,]" and of radiation of pain into his buttocks and hips.  *Id*. at 3-4 (quoting Record at 577).

5.      Dr. Buxton found that he was able to walk on his heels and toes without evidence of distal weakness or significant balance dysfunction but that "this was uncomfortable for him secondary to increased back pain."  *Id*. at 4 (quoting Record at 579).  Dr. Buxton noted that the plaintiff "had numerous questions regarding management of his pain" and was "in a very difficult

situation, as it appear[ed] his back pain [was] significantly limiting his functional activities and quality of life." *Id*. (quoting Record at 580).

6.      In 2013, the plaintiff continued to complain of back pain to Dr. Ray. *See id*.; *see also* Record at 596-601.  Dr. Ray diagnosed him with osteoarthritis and known disc herniations. *See* Statement of Errors at 3; *see also* Record at 597, 601.

In his statement of errors and through his counsel at oral argument, the plaintiff faulted the administrative law judge for giving heavy weight to the March 28, 2011, opinion of agency examining consultant Miguel A. Velazquez, D.O., and ignoring subsequent contrary evidence that, in his view, superseded the Velazquez findings, including a July 18, 2012, opinion of nonexamining consultant Benjamin Weinberg, M.D., that he was limited to medium exertional level work with postural and environmental limitations and, most importantly, the above-discussed MRI and treatment note evidence from 2012 and 2013, which he argues demonstrated worsening back pain with resultant functional limitations. *See* Statement of Errors at 3-5; Record at 149-51, 434-36.

As the commissioner points out, *see* Defendant's Opposition to Plaintiff's Itemized Statement of Specific Errors ("Opposition") (ECF No. 15) at 2, the administrative law judge assessed no back pain-related functional limitations because he found, at Step 2, that the plaintiff had failed to establish that he had a medically determinable back impairment, *see* Record at 21-22; *see also* Social Security Ruling 96-3p, reprinted in *West's Social Security Reporting Service Rulings 1983-1991* (Supp. 2015) ("SSR 96-3p"), at 117 ("Symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect an individual's ability to do basic work activities unless the individual first establishes by objective medical evidence (i.e.,

signs and laboratory findings) that he or she has a medically determinable physical or mental impairment(s)[.]'").

He noted that the plaintiff had "testified that he has three herniated disks and degenerative disc disease in his back[,]" that "he was unable to mow the lawn or shovel snow for more than 5 minutes[,]" and that "he could only stand and sit for 10 minutes at a time because his back always hurts." Record at 21. However, he concluded that "[t]he objective medical evidence does not support these allegations." *Id.* He relied on (i) Dr. Velazquez's 2011 finding of essentially normal results on examination, (ii) a normal x-ray of the plaintiff's lumbar spine in August 2011, and (iii) notes of the plaintiff's January 2013, visit to Dr. Buxton indicating, *inter alia*, that, while an MRI of the plaintiff's lumbar spine showed some disc height loss and dessication at L4-L5 and L5-S1, there was no evidence of nerve root compression, Dr. Buxton did not recommend surgical intervention or epidural injections but, rather, stretching and physical therapy, and the plaintiff never followed up with physical therapy. *See id.* at 21-22.

While the plaintiff frames his complaint about the administrative law judge's failure to include limitations resulting from his back pain as a Step 4 RFC argument, *see* Statement of Errors at 2-5, as the commissioner concedes, *see* Opposition at 2, it necessarily implicates Step 2.

In finding that the plaintiff had no medically determinable back impairment, the administrative law judge erred. He minimized the significance of the plaintiff's evidence that (i) a December 6, 2012, MRI revealed the presence of "[c]entral disc herniations at L4-5 and L5-S1 without evidence of nerve root compromise[,]" Record at 602, (ii) Dr. Buxton, a neurosurgical/ spine specialist, diagnosed him on January 30, 2013, with lumbar disc degeneration (L4-5 and L5-S1) and low back pain, *see id.* at 579, and (iii) Dr. Ray diagnosed him on March 29, 2013, with "chronic [back pain] from OA [osteoarthritis] and known disc herniations[,]" *id.* at 597.

While Dr. Velazquez found no evidence of a medically determinable back impairment when he examined the plaintiff on March 28, 2011, *see id*. at 435-36, the administrative law judge's reliance on that report was misplaced in that, nearly two years later, the plaintiff underwent further testing and examination that led to his back diagnoses.  No agency nonexamining consultant who expressed an opinion as to the plaintiff's medically determinable physical impairments and/or physical RFC had the benefit of review of that later evidence: their opinions all predated it.  *See id*. at 122, 124-25 (August 21, 2011, opinion of Dr. Weinberg), 135 (April 19, 2011, opinion of Leslie Abramson, M.D.), 146, 149-51 (July 18, 2012, opinion of Dr. Weinberg), 161, 164 (October 1, 2012, opinion of Donald Trumbull, M.D.).

Nonetheless, "[i]f error occurred at step 2, remand is only appropriate when the claimant can demonstrate that an omitted impairment imposes a restriction beyond the physical and mental limitations recognized in the Commissioner's RFC finding, and that the additional restriction is material to the ALJ's [administrative law judge's] 'not disabled' finding at step 4 or step 5." *Dunning v. Colvin*, No. 2:14-cv-00401-JCN, 2015 WL 4139618, at *2 (D. Me. July 9, 2015).  *See also, e.g., Shinseki v. Sanders,* 556 U.S. 396, 409 (2009) (a claimant bears the burden to demonstrate harmful error in an agency's determination).

As the commissioner suggests, *see* Opposition at 4, the plaintiff fails to carry this burden. The plaintiff observes that, while the administrative law judge stated that Dr. Buxton found him able to toe and heel walk, he omitted Dr. Buxton's qualification that "this was uncomfortable for him secondary to increased back pain."  Statement of Errors at 4-5 (quoting Record at 579).  He further complains that the administrative law judge ignored portions of Dr. Ray's notes setting forth an "opinion" as to his functional limitations.  *See id*. at 5.  However, as the commissioner rejoins, *see* Opposition at 5-6, Dr. Buxton's finding of discomfort on heel and toe walking is not a

functional restriction or necessarily indicative of one, and the cited portions of Dr. Ray's treatment notes, which reflect the plaintiff's subjective complaints, *see* Record at 500, 505, are not "medical opinions," that is, "statements . . . that reflect *judgments* about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, and what you can still do despite impairment(s), and your physical or mental restrictions[,]" 20 C.F.R. § 416.927(a)(2) (emphasis added).[2]

Tellingly, when I asked the plaintiff's counsel at oral argument how any error in failing to find a medically determinable back impairment was outcome-determinative, he argued that, had the administrative law judge reassessed his client's physical RFC to take into account the back impairment, he should have found him limited to no more than a sedentary exertional level and, factoring in his mental impairments, could not have found him automatically disabled.  He did not contend that this exercise *necessarily* would have resulted in a finding of limitation to a sedentary exertional level or, ultimately, a finding of disability.

This is fatal to his bid for remand on this basis.  *See, e.g., Shinseki,* 556 U.S. at 409.

### B.  Finding of Moderate Difficulties in Concentration and Social Functioning

The plaintiff next faults the administrative law judge for finding, at Step 3, that his psychological impairments caused only moderate difficulties in concentration, persistence, or pace and in social functioning rather than marked difficulties, as assessed by Dr. Newcomb and indicated by his girlfriend, Brenda Johnsen.  *See* Statement of Errors at 5-8.[3]  I find no error.

---

[2] As the commissioner suggests, *see* Opposition at 5, while the administrative law judge found no medically determinable back impairment, he also indicated that the objective evidence did not support the plaintiff's allegations of resulting limitations, including an inability to mow the lawn or shovel snow for more than five minutes, given, *inter alia*, the fact that the December 2012 MRI showed no evidence of nerve root compression and that Dr. Buxton had recommended conservative treatment in the form of stretching and physical therapy, *see* Record at 21-22.

[3] Both sides refer to the plaintiff's girlfriend as Brenda "Johnson."  *See* Statement of Errors at 6; Opposition at 1.  However, in her function reports, she spelled her last name "Johnsen."  Record at 276, 329.

The administrative law judge deemed the plaintiff's allegations not entirely credible, *see* Record at 25 – a finding that the plaintiff does not contest, *see generally* Statement of Errors.  He stated:

> The [plaintiff] reported that he had trouble remembering.  He testified that it was difficult for him to read a book and that he had to reread paragraphs because he had difficulty focusing and concentrating.  The undersigned finds that limiting the [plaintiff] to simple tasks accommodates any problems that [he] might have focusing.
>
> The [plaintiff] testified that he feels anxious on a daily basis and that he avoids crowded supermarkets.  He reported that he did not like people or dealing with the public.  The undersigned considered [his] complaints[,] and limitations were incorporated in the [RFC] to address these social functioning issues, namely, [he] was limited to work with no public contact.
>
> The [plaintiff's] level of functioning does not support his allegations of disability. [His] activities include mowing the lawn with a friend, fishing, and attending doctor appointments.  Additionally, treatment notes show that [he] fished with a friend and played Frisbee.  These activities are consistent with the [RFC] above, and they show that the [plaintiff] is capable of sustaining basic work activities.

*Id*. at 25-26 (citations omitted).

The administrative law judge then resolved conflicts in the expert opinion evidence.  He gave great weight to the opinions of agency nonexamining consultants Lewis F. Lester, Ph.D., dated July 11, 2012, and Brian Stahl, Ph.D., dated September 20, 2012, which he deemed supported by treatment notes showing that the plaintiff's mental symptoms improved with medication.  *See id*. at 26-27; *see also id*. at 151-53 (Lester), 164-66 (Stahl).  Both Drs. Lester and Stahl had assessed the plaintiff, at Step 3, with only moderate limitations in social functioning and in concentration, persistence, or pace.  *See id*. at 147, 162.  He gave significant weight to the April 27, 2011, opinion of agency examining consultant Roger Ginn, Ph.D., that the plaintiff should be able to remember simple job-related tasks and get along adequately with people but would need a simple, highly structured job.  *See id*. at 27; *see also id*. at 432.  He gave little weight to Dr. Newcomb's August 22, 2013, opinion that the plaintiff had marked restrictions in activities of

daily living, social functioning, and concentration, persistence, or pace and, thus, met the criteria

of Listings 12.04 (affective disorders) and 12.06 (anxiety-related disorders).  *See id*. at 27; *see also*

*id*. at 621, 631.

He explained that he deemed the Newcomb opinion "inconsistent with the longitudinal

record, which show[ed] that with treatment the [plaintiff's] panic disorder was controlled" and that

his "depression improved and he discontinued counseling." *Id*. at 27 (citations omitted).  He added

that the Newcomb opinion "appear[ed] to be based primarily on the [plaintiff's] subjective

report[s] of his symptoms, which as previously discussed are not always credible." *Id*.

He gave little weight to a Global Assessment of Functioning ("GAF") score of 50 to 55

assessed by Dr. Ginn on the basis that GAF scores are highly subjective and consider issues that

are not vocationally related, but significant weight to GAF scores of 55 assessed by treating

counselor April Clark, L.C.S.W., treating physician Daniel Bates, D.O., and treating counselor

Barbara Chase, L.C.S.W., because they reflected only moderate impairment, consistent with the

overall objective evidence of record and the plaintiff's activities, which included fishing. *See id*.[4]

---

[4] A GAF score represents "the clinician's judgment of the individual's overall level of functioning."  American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed., text rev. 2000) ("DSM-IV-TR").  The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning." *Id*.  The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id*. at 34.  A GAF score of 51 to 60 represents "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflict with peers or co-workers)." *Id*. (boldface omitted).  A GAF score of 41 to 50 represents "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id*. (boldface omitted).  In 2013, the DSM-IV-TR was superseded by the American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* (5th ed. 2013) ("DSM-V"), which jettisoned the use of GAF scores.  *See* DSM-V at 16 ("It was recommended that the GAF be dropped from DSM-5 for several reasons, including its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice.").  Nonetheless, I assess the supportability of the administrative law judge's decision based on the evidence available to him at that time.

Finally, he considered Johnsen's testimony and third-party function reports, stating that, to the extent that she reiterated the plaintiff's allegations that he had trouble dealing with the public and crowded stores and had a high level of anxiety and difficulty concentrating, the RFC determination "recognize[d] the [plaintiff's] limitations in his social functioning and in his ability to concentrate by limiting him to simple work that involves no public contact." *Id*. at 28.

The plaintiff complains that the record lacks substantial evidence that he had only moderate difficulties with concentration because the administrative law judge made no reference to Dr. Newcomb's findings on mental status examination that he could not correctly name the previous president of the United States or the current governor of Maine, had difficulty telling time on a watch with hands, was unable to spell words like "street," had difficulty with concentration, was unable to perform serial 7s, showed impaired memory, could not recall any of three recent memory items at the end of five minutes, and displayed a diminished attention span. *See* Statement of Errors at 5-6; Record at 615. He asserts that, in fact, Dr. Newcomb's finding that he had a marked restriction in concentration, persistence, or pace was based on objective cognitive testing, not the plaintiff's subjective complaints. *See* Statement of Errors at 6.

With respect to social functioning, he argues that the administrative law judge ignored Johnsen's third-party function report and testimony as well as (i) a May 3, 2011, diagnosis by Richard McNamara, P.A., of recurrent severe depressive disorder, together with NcNamara's notation of the plaintiff's report that "it is somewhat difficult to meet home, work or social obligations[,]" "the symptoms are aggravated by lack of sleep[,]" and "[h]e is experiencing irritable mood, poor concentration, indecisiveness and sleep disturbance[,]" and (ii) the March 7, 2013, assessment of social worker Chase that he had "severe" problems in "education, finances, occupation and social environment." *Id*. at 6-8 (quoting Record at 550, 553, 593). He argues that

11

the Chase "opinion" could outweigh the opinions of "acceptable" medical sources, particularly where she had a lengthy relationship with him, was his primary mental health care provider, and could provide relevant evidence about his impairment and ability to work. *See id*. at 7-8. He contends that, in the absence of any consideration of her "opinion," the administrative law judge's decision was unsupported by substantial evidence. *See id*. at 8.

Nonetheless, the administrative law judge supportably resolved conflicts in the opinion and other evidence.

As the commissioner points out, *see* Opposition at 9, the administrative law judge was not necessarily mistaken in stating that Dr. Newcomb relied primarily on the plaintiff's subjective allegations. Dr. Newcomb did rely, in the "Diagnoses" section of his report, on the plaintiff's subjective allegations. *See* Record at 614. These allegations, as well as the findings on mental status examination to which the plaintiff points, presumably informed Dr. Newcomb's overall opinion.

In any event, as the commissioner suggests, *see* Opposition at 9-10, even assuming *arguendo* that the administrative law judge mischaracterized the Newcomb report in this regard, the plaintiff fails to demonstrate reversible error. He does not take issue with the administrative law judge's additional finding that Dr. Newcomb's opinion was inconsistent with the longitudinal record as a whole. *See* Statement of Errors at 5-6. This constituted a good reason for rejecting the Newcomb opinion, sufficient even to satisfy the more stringent requirements pertaining to treating sources. *See, e.g., Smith v. Colvin*, No. 2:14-cv-429-JHR, 2015 WL 4391420, at *6 n.6 (D. Me.

July 15, 2015) ("A one-time examining consultant is not subject to the 'treating source' rule, pursuant to which a medical opinion may be rejected only for good reason.").[5]

With respect to the Johnsen evidence, as the commissioner points out, *see* Opposition at 10-11, the plaintiff fails even to acknowledge that the administrative law judge discussed her testimony and function report, let alone explain why his conclusion that his RFC adequately reflected her comments is erroneous, *see* Statement of Errors at 6-7. He, therefore, falls short of demonstrating error, let alone reversible error, in the handling of that evidence. *See, e.g., Shinseki,* 556 U.S. at 409.

Nor does the administrative law judge ignore McNamara's diagnosis of recurrent severe depressive disorder. He found, at Step 2, that the plaintiff suffered from a severe impairment of affective disorder, Finding 2, Record at 20, and expressly discussed an identical diagnosis by Clark, of the same practice as McNamara, *see id*. at 27, 392.

Finally, as the commissioner points out, *see* Opposition at 12-13, Chase's notation that the plaintiff had severe problems related to education, finances, occupation, and social environment was part of an "Axis IV" assessment pertaining to psychosocial and environmental problems – in essence, situational stressors, *see, e.g.*, *Emsak v. Colvin*, No. 13-CV-3030, 2015 WL 4924904, at *2 n.4 (E.D.N.Y. Aug. 18, 2015) ("In the multi-axial evaluation, Axis I refers to clinical disorders and other conditions that may be a focus of clinical attention; Axis II refers to personality disorders

---

[5] At oral argument, I asked the plaintiff's counsel about the administrative law judge's finding that Dr. Newcomb's opinion was inconsistent with the longitudinal record. He argued that the Newcomb opinion was consistent with the longitudinal record, which demonstrated the plaintiff's longstanding treatment for mental health issues, including the prescription of four or five psychiatric medications, his clear discomfort around crowds, and his inability to finish some tasks, either because of social anxiety or memory problems. It is not self-evident that this evidence is more consistent with the marked restrictions in social functioning and concentration, persistence, or pace found by Dr. Newcomb than the moderate restrictions assessed by the administrative law judge. In any event, the plaintiff's counsel did not address the evidence on which the administrative law judge relied in deeming the Newcomb opinion inconsistent with the record – that, "with treatment the [plaintiff's] panic disorder was controlled[,]" and his "depression improved and he discontinued counseling." Record at 27 (citations omitted).

and mental retardation; Axis III refers to general medical conditions; Axis IV refers to psychosocial and environmental problems; and Axis V rates the patient's GAF.") (citing DSM-IV-TR at 27-34); *Bell v. Colvin*, Civil Action No. 4:14-CV-523-RDP, 2015 WL 4656362, at *2 n.4 (N.D. Ala. Aug. 6, 2015) (in the multi-axial framework, "Axis IV evaluates patient's main stressors").

The plaintiff does not explain how these "situational stressors" reflect functional limitations stemming from his underlying mental impairments. *See* Statement of Errors at 7-8. In any event, the administrative law judge discussed evidence from Chase, observing that she noted on March 28, 2013, that the plaintiff was feeling better with an improvement in the weather and that they had decided to discontinue therapy because he was only mildly depressed, with much of his depression stemming from financial problems (as well as alleged pain). *See* Record at 25, 592. He also noted that Chase had assessed a GAF score of 55, indicative of only moderate limitations. *See id*. at 27, 593.

Finally, as the commissioner contends, *see* Opposition at 13-14, Chase's Axis IV notation does not qualify as a "medical opinion" that merits express discussion. It does not address the plaintiff's functional capabilities and restrictions, and was provided by a non-acceptable medical source. *See* 20 C.F.R. § 416.927(a)(2) (defining "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."); *see also id*. § 416.913(a) (omitting licensed social workers from list of "acceptable medical sources").

While, as the plaintiff observes, *see* Statement of Errors at 7-8, in some cases it may be appropriate to give greater weight to the opinion of a non-acceptable medical source than that of

an acceptable medical source, *see* Social Security Ruling 06-03p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2015) ("SSR 06-3p"), at 332, he does not explain how Chase's Axis IV notation sheds light on her "judgment about some of the same issues addressed in medical opinions from 'acceptable medical sources,' including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions[,]" *id.* He, therefore, fails to show that there was any error in the administrative law judge's omission of discussion of this specific detail, or that any error mattered.[6]

## II.  Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof.   A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 29th day of September, 2015.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge

---

[6] The plaintiff cites "*Foster v. Astrue*, 2011 NC 5928587 (D.D.N.C. 2011)," for the proposition that an administrative law judge committed reversible error in failing to properly assess the opinion of a treating therapist who had a lengthy relationship with a claimant, was her primary mental health care provider, and could provide relevant evidence regarding her impairment and ability to work. *See* Statement of Errors at 7-8.  This appears to be a reference to *Foster v. Astrue*, 826 F. Supp.2d 884 (E.D.N.C. 2011).  As the commissioner argues, *see* Opposition at 14 n.5, *Foster* is distinguishable in that the portion of Chase's treating record to which the plaintiff points is not an opinion regarding the plaintiff's functional limitations or capacity to work.